**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

UNITED STATES OF AMERICA

v.

RICO MCGEE,
         Defendant.
_____

DECISION AND ORDER
& REPORT AND
RECOMMENDATION
15-CR-6079 (FPG)

FILED FEB 17 2017 MARY C. LOEWENGUTH, CLERK WESTERN DISTRICT OF NY

Preliminary Statement
=====================

On July 21, 2015, defendant Rico McGee (hereinafter "McGee" or "defendant") was charged by Superseding Indictment ("the Indictment") with Hobbs Act Conspiracy (Count I), two counts of Attempted Hobbs Act Robbery (Counts II and III), and Use of a Firearm During and in Relation to a Crime of Violence (Count IV). See Indictment (Docket # 8). On February 29, 2016, the defendant's counsel at the time, Kevin McKain, Esq., filed omnibus motions including a motion to suppress statements. See Docket # 36. Defendant thereafter was assigned new counsel, and on June 20, 2016 defendant's omnibus motions were supplemented. See Docket # 59. The government responded to the first set of motions on March 25, 2016 and to the second set of motions on July 5, 2016. See Docket ## 59, 62. On July 11, 2016, the Court heard oral argument and resolved the majority of defendant's omnibus motions on the record. See Docket # 64. The Court reserved decision on defendant's motions (1) to dismiss the Indictment, (2) for a bill of particulars, (3) for

grand jury disclosure, (4) for severance, and (5) to suppress statements. The Court held an evidentiary hearing on the suppression motion on September 7, 2016. See Docket # 70. Based on the record now before the Court, the following is my Report and Recommendation and Decision and Order for defendant's remaining motions.[1]

Motion to Dismiss the Indictment: All four counts of the Indictment relate to McGee's alleged participation in two "home invasion" robberies occurring on October 8, 2014 and November 4, 2014. Count I alleges that McGee conspired with others "to obstruct, delay and affect commerce" and the "movement of articles and commodities in commerce" by robbing money and drugs from individuals "engaged in the unlawful distribution and possession of controlled substances, including heroin and marijuana" in violation of 18 U.S.C. § 1951(a), commonly referred to as the Hobbs Act. Count II alleges that the October 8 robbery violated the Hobbs Act and Count III alleges that the November 4 robbery violated the Hobbs Act. Finally, Count IV alleges that McGee knowingly and unlawfully used, carried and brandished a handgun during and in furtherance of the November 4 robbery, "in furtherance" of "a crime of violence" – the Hobbs Act robbery. See Indictment (Docket # 8).

---

[1] By Order of Hon. Frank P. Geraci, United States District Judge, dated October 9, 2015, all pretrial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B). See Docket # 20.

The common denominator in all four counts is a violation of the Hobbs Act which, in turn, requires that the charged robbery be one that "affects" interstate commerce. It is this nexus to interstate commerce that McGee claims is lacking from the criminal conduct alleged in the Indictment. Unfortunately for McGee, this Court is not writing on a "clean slate" and, as interesting as McGee's arguments may be in a discussion of the limits of Congress's commerce clause power, his contentions are inconsistent with established Second Circuit and Supreme Court precedents – at least at this particular juncture of the prosecution.

As a general matter, it is settled that Congress has the power to control purely local drug distribution activities because such local activities "are part of an economic 'class of activities' that have a substantial effect on interstate commerce." Gonzales v. Raich, 545 U.S. 1, 17 (2005). In Taylor v. United States, __ U.S. __, 136 S. Ct. 2074 (2016), the Supreme Court addressed the contours of the interstate commerce requirement found in the Hobbs Act. Mr. Taylor was charged with two home invasions of drug dealers, seeking to rob them of drugs and drug proceeds. Taylor argued that the government failed to satisfy the interstate commerce element of the Hobbs Act because it had not proven that the drugs subject to the robbery "originated or were destined for sale out of State," or that the

victim drug dealers "operated an interstate business." Id. at 2080. Relying on its holding in Raich, the Supreme Court rejected Taylor's commerce arguments. The Court explained its holding was simply a logical extension of Raich:

> The case now before us requires no more than that we graft our holding in Raich onto the commerce element of the Hobbs Act. The Hobbs Act criminalizes robberies affecting "commerce over which the United States has jurisdiction." § 1951(b)(3). Under Raich, the market for marijuana, including its intrastate aspects, is "commerce over which the United States has jurisdiction." It therefore follows as a simple matter of logic that a robber who affects or attempts to affect even the intrastate sale of marijuana grown within the State affects or attempts to affect commerce over which the United States has jurisdiction.

Id. Thus, when a robber tries to steal drugs from a drug dealer, "proof of such an attempt in itself supports the conclusion that the robber attempted to affect interstate commerce, and the robber is therefore convictable under the Hobbs Act." United States v. Lee, 834 F.3d 145 (2d Cir. 2016).

The foregoing is not to say that the defendant's arguments here are irrelevant, but they are certainly premature. The Court in Taylor explained that its holding "does not make the commerce provision of the Hobbs Act superfluous." Taylor at 2081. Indeed, there may be Hobbs Act trials where the conduct proven, "even in the aggregate, may not substantially affect commerce." Id. at 2081. But the Court also made clear that the nature of the proof needed to satisfy the commerce element

focuses not on the specific interstate actions of the defendant, but on the nature of the defendant's activities. "[W]here the target of a robbery is a drug dealer, proof that the defendant's conduct in and of itself affected or threatened commerce is not needed. All that is needed is proof that the defendant's conduct fell within a category of conduct that, in the aggregate, had the requisite effect." Id.

McGee also moves to dismiss the Indictment because the substantive counts fail to allege "the specific mens rea to violate the statute." See Def.'s Omnibus Mot. (Docket # 59) at 59. In response, the government acknowledges that criminal intent must be alleged either explicitly or implicitly in a Hobbs Act charge, but argues that the Indictment is sufficient because it conveys the required mens rea element through the use of the term "robbery" which, according to the government, has been held to imply knowing and willful conduct. See Gov't Response (Docket # 62) at 21.

Under Second Circuit precedent, the government's position is correct. The Indictment is sufficient to assert the *mens rea* element of robbery even though it does not contain the words "knowingly" or "willfully." The Indictment specifically references "robbery" and its statutory definition, and thereby imputes the necessary *mens rea* therein.[2] The Second Circuit has

---

[2] "The term 'robbery' means the unlawful taking or obtaining of

5

ruled that the statutory definition of "robbery" in 18 U.S.C. § 1951(b)(1) implies "knowing" and "willful" conduct, and an Indictment is sufficient even if it does not explicitly reference those terms. See United States v. Jackson, 513 F. App'x 51, 55 (2d Cir. 2013), cert. denied, 133 S. Ct. 1848 (2013); see also United States v. Tobias, 33 F. App'x 547, 549 (2d Cir. 2002), cert. denied, 538 U.S. 933 (2003) ("The indictment tracked the language of 18 U.S.C. § 1951, using the term 'robbery,' which necessarily implies knowing and willful conduct."); United States v. McCoy, 14-CR-6181 EAW, 2016 WL 6952351, at *3-5 (W.D.N.Y. Nov. 28, 2016) ("the grand jury in this case plainly determined that there was probable cause to believe that Defendants committed a Hobbs Act robbery . . . . Under settled Second Circuit precedent, this is plainly sufficient to allege the *mens rea* element of "knowingly" and "willfully" for a Hobbs Act violation").

It is therefore my Report and Recommendation that defendant's motion to dismiss the Indictment as a whole, and individual counts, be **denied.**

Motion for Bill of Particulars: Defendant has requested

---

personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining." 18 U.S.C. § 1951(b)(1).

that, should the motion to dismiss the Indictment be denied, the government provide a bill of particulars. Defendant "requests particularization as to the acts of this defendant and the co-conspirators alleged within the conspiracy affording federal jurisdiction." See Def.'s Omnibus Mot. (Docket # 59) at 5-9. The defendant's motion papers list twenty-six particularization demands, including the names, roles and acts of co-conspirators, specific acts and conduct of the defendant, quantities of controlled substances and monies involved in each count, the names of alleged victims, and the manner in which the actions affect interstate commerce. Id. at 6-8.

As discussed above, to meet the commerce element of the Hobbs Act under Taylor, it is enough for the government to prove that the "defendant knowingly stole or attempted to steal drugs or drug proceeds, for, as a matter of law, the market for illegal drugs is commerce over which the United States has jurisdiction." Taylor, 136 S. Ct at 2081 (internal quotations omitted). Given the nature of the required proof, McGee's argument that particularization is required to discover the nexus to federal jurisdiction is misplaced as a pretrial motion. The government has disclosed that McGee is alleged to have attempted to rob drugs and money from a known drug dealer, which, if proved, will establish the required commerce element for a Hobbs Act robbery. See United States v. Larson, No.

07CR304S, 2009 WL 899435, at *9 (W.D.N.Y. Mar. 26, 2009) (denying particularization of the interstate commerce nexus in a Hobbs Act Indictment because it is "an evidentiary matter for the Government to prove [at trial]"); see also United States v. Davis, No. 06 CR. 911 (LBS), 2009 WL 637164, at *13 (S.D.N.Y. Mar. 11, 2009) (denying motion for bill of particulars where the government disclosed that it intended to prove at trial that the targets of the robbery were engaged in interstate drug trafficking, stating "[w]e cannot say that the offenses charged or the theory of prosecution is so obscure that defendants will be hindered in preparing their defenses").

As to the other aspects of the defendant's demands, with one exception discussed below, I find that additional particularization is not required. "[A] bill of particulars is not necessary where the Government has made sufficient disclosures concerning its evidence and witnesses by other means." United States v. Chen, 378 F.3d 151, 163 (2d Cir. 2004). Moreover, bills of particulars are frequently deemed inappropriate in cases involving conspiracies. "Demands for particulars regarding the formation of a conspiracy have almost universally been denied. Matters such as the exact time and place of the overt acts and names of the persons present are not properly the subject of bill of particulars." United States v. Montalvo, No. 110CR000366-RJA-JJM, 2014 WL 3894377, at *12

(W.D.N.Y. Apr. 16, 2014) (internal quotations and citations omitted).

There is one area discussed during the motions argument where I find additional particularization to be necessary to allow the defendant to adequately prepare his defense. During the motions hearing, defense counsel expressed concern over whether Counts II and III of the Indictment involve attempted or completed robberies. Both are charged as attempts, but defense counsel stated that a non-charged co-conspirator pled guilty to burglary charges in state court related to the same events charged in the instant Indictment. In addition, defense counsel stated that he has no information about the items alleged to have been taken, or information regarding the agreements, within the conspiracy, to take them. On these limited topics I find further particularization to be appropriate. Accordingly, the government should disclose to the defense within **thirty (30) days of this Order** (1) whether either of the charged robberies were in fact completed and (2) a list of the items and quantities that were alleged to have been taken and/or targeted by the defendant in each of the charged robberies.

For the reasons stated above, it is my Decision and Order that defendant's motion for a bill of particulars is **denied except for the specific particulars identified herein.**

<u>Motion for Grand Jury Disclosures:</u> Defendant argues that,

should dismissal of the Indictment be denied, he should be entitled to extensive inspection of the grand jury proceedings, including the instructions given to the grand jury, log books, names of people who testified before the grand jury, the source of "authorization" of persons in the grand jury room, the length of deliberation, and minutes from the proceedings. Defendant has not provided any specific reasons or facts tending to support his broad requests other than an allegation that there is insufficient legal evidence to support the charges on each individual count of the Indictment. See Def.'s Omnibus Mot. (Docket # 59) at 14-29.

Grand jury proceedings receive a presumption of secrecy and closure. See In re Grand Jury Subpoena, 103 F.3d 234, 239 (2d Cir. 1996). "The burden is on the party seeking disclosure to show a particularized need that outweighs the need for secrecy." Id. Here, the defendant's reasons for seeking disclosure of grand jury information are based on speculation and conjecture - clearly insufficient grounds on which to disturb the presumption of grand jury secrecy. See United States v. Yarborough, 2007 WL 962926, at *13 (W.D.N.Y. Mar. 28, 2007) ("a review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct"); see also United States v. Gonzalez, No. 06 Cr. 726(WHP), 2008 WL 3914877, at *6 (S.D.N.Y. Aug. 26, 2008) ("a defendant's mere speculation as to what occurred in

front of the grand jury does not warrant inspection of the minutes") (internal citation omitted). Therefore, it is my Decision and Order that defendant's motion for grand jury disclosures be **denied**.

Motion for Severance: The defendant moves for severance of his case from the named co-defendant pursuant to Rules 12(b)(5) and 14 of the Federal Rules of Criminal Procedure. McGee argues that he "will be severely prejudiced if compelled to go to trial with the other named defendant" because he will be tainted by the "spill over" of evidence presented against his co-defendant, and "will fall victim to an impermissible 'guilt-by-association' analysis by the trial jury." See Def.'s Omnibus Mot. (Docket # 59) at 40-44. Defendant only identifies one piece of "spill over" evidence: a video tape which allegedly depicts the co-defendant and an un-indicted third-party engaging in the alleged robbery. Defendant states that he is not depicted anywhere in the video, but has met and conversed with the co-defendant in the past. Defendant argues that he and his co-defendant will have "antagonistic defenses" at trial. Id. at 43.

Rule 14 of the Federal Rules of Criminal Procedure provides that if joinder of defendants "for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

11

However, as the Supreme Court has noted, "[j]oint trials play a vital role in the criminal justice system" because "[t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Zafiro v. United States, 506 U.S. 534, 537 (1993) (internal quotation marks and citations omitted). Accordingly, although the decision whether to grant severance lies within the district court's "sound discretion," severance should be granted only where there is a danger of substantial prejudice, namely "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. at 539. Moreover, where, as here, "'spillover evidence' is alleged as a ground for a Rule 14 severance, the defendant's burden to demonstrate substantial prejudice resulting in an unfair trial is heavy." United States v. Mullen, 243 F.R.D. 54, 74 (W.D.N.Y. 2006).

Here, defendant has not met his "substantial burden" of proving that his role in the alleged conspiracy warrants a separate trial from the other defendant. First, the only piece of "spillover evidence" that defendant has pointed to is a video tape of his co-conspirator and co-defendant engaging in the alleged robbery. As in any conspiracy trial, evidence regarding the conduct of a co-conspirator as to the alleged events will be

12

admissible against the defendant even if the two were granted separate trials, because such proof would still be "relevant to proving the nature and scope of the conspiracy in which both were, to differing degrees, involved." United States v. Spinelli, 352 F.3d 48, 56 (2d Cir. 2003). "[D]iffering levels of culpability and proof are inevitable in any multiple defendant trial and, standing alone, are insufficient grounds for separate trials." Mullen, 243 F.R.D. at 74 (citation omitted). Nor does the possibility of antagonistic defenses require severance, particularly where the trial judge can employ other measures to minimize or eliminate unfair prejudice. See United States v. O'Connor, 650 F.3d 839, 858 (2d Cir. 2011) ("The possibility that codefendants may mount antagonistic defenses is not itself a ground for severance where the risk of prejudice can be offset by less drastic measures . . . such as limiting instructions.") (internal quotations and citations omitted). In sum, McGee has "failed to overcome the federal preference that defendants who are indicted together, particularly in a criminal conspiracy, be tried together." United States v. Gane, No. 10-CR-90S, 2010 WL 4962955, at *3 (W.D.N.Y. Nov. 24, 2010). Accordingly, it is my Report and Recommendation that defendant's motion for severance be **denied**.

Motion to Suppress Statements: Defendant seeks to suppress statements that he made during and after his arrest. The Court

13

held an evidentiary hearing on September 7, 2016. The government presented one witness to testify, Special Agent Jason Floyd. See Docket # 70.

(1) <u>Statements Made During the Course of McGee's Arrest</u>: Special Agent Floyd testified that he arrested defendant on October 8, 2015 at a high rise apartment building in Harlem, New York, pursuant to an arrest warrant issued by the Western District of New York. Hearing Transcript ("Tr.") (Docket # 76) at 4. During the arrest, Floyd asked McGee if he had any medical conditions, to which McGee responded that he had been shot in the hip in February. Tr. at 7. McGee also mentioned that he had been drinking alcohol the night before, and agent Flynn testified that he smelled the odor of alcohol on the defendant. Id. According to Agent Floyd, aside from the smell of alcohol, McGee did not exhibit any other signs of intoxication such as slurred speech or lack of coordination. Tr. at 8. Based on the defendant's statements regarding his medical issues, Floyd decided to transport McGee to New York Presbyterian Hospital for medical clearance before taking him into custody. Tr. at 8-10. Agent Floyd testified that while he was with McGee in the elevator of the apartment building, McGee asked him "is this about that thing in Rochester?". Tr. at 6. Floyd replied that we would "discuss the matter once we got back to my office." Id. According to Floyd, as his vehicle neared

the hospital, McGee told him he was "car sick" and felt nauseas. Upon arrival at the hospital, McGee vomited after exiting the vehicle. Tr. at 19. McGee and Agent Floyd arrived at the hospital around 7:30 a.m. and McGee was thereafter examined by medical personnel. McGee received a medical clearance for custodial confinement form from the hospital at 8:36 a.m. See Gov't Ex. # 2.

Based on the foregoing factual findings, I find that McGee's post-arrest statement in the elevator, when he asked Agent Floyd about his arrest, "is this about that thing in Rochester?" is admissible because it was a spontaneous statement and not prompted by interrogation. "Miranda does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." United States v. Hayes, 120 F.3d 739, 744 (8th Cir. 1997) (internal quotations and citations omitted). The test for determining whether the conduct of law enforcement agents amounted to "interrogation" is whether the words or actions of law enforcement agents "were reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 302 (1980). Interrogation encompasses both express questioning and its functional equivalent and includes any "practice that the police should know is reasonably likely to evoke an incriminating response

15

from a suspect." Id. at 300-02. In making an assessment, the Court must consider "the totality of the circumstances of the agents' conduct." United States v. Cota, 953 F.2d 753, 758 (2d Cir. 1992).

Here, McGee was never asked a question by Agent Flynn in the elevator - in fact, the opposite occurred - McGee asked law enforcement a question. There was also nothing adduced at the suppression hearing to suggest that law enforcement's words or actions amounted to the functional equivalent of interrogation. See Innis, 446 U.S. at 300-01 (an interrogation consists of "express questioning or its functional equivalent").

(b) Custodial Interrogation at FBI Office: Agent Floyd testified that after McGee was discharged from the hospital, he brought the defendant to the FBI building in downtown Manhattan for processing and interviewing. Tr. at 11. After McGee was processed, he was taken to an FBI interview room where he was questioned by Agent Floyd and Floyd's partner. Agent Floyd testified that the questioning began at 10:28 a.m. and lasted approximately ninety minutes. Tr. at 14-15. Agent Floyd began the interview by reading the defendant his Miranda rights, and the defendant signed the advice of rights form (Gov't Ex. # 3) before questioning commenced. Tr. at 17. The entire interview, including the reading and signing of defendant's Miranda rights, was videotaped, and has been reviewed in full by the Court. See

16

Gov't Ex. # 1.

McGee does not dispute that he was given <u>Miranda</u> warnings, but argues that all statements made by him during his arrest and post-arrest interview must be suppressed because they were involuntarily made because he was under the influence of alcohol. <u>See</u> Def.'s Omnibus Mot. (Docket # 59) at 50-53. However, the evidenced adduced at the suppression hearing and documented on the videotaped confession does not support defendant's voluntariness claims. Even assuming for the sake of argument that McGee was intoxicated at the time that he was arrested, or hours later when he was interviewed, there is no <u>per se</u> rule that a confession given under such circumstances is involuntary. "Courts have repeatedly rejected arguments that a statement made in response to law enforcement interrogation is involuntary solely due to the confessor's diminished mental state, regardless of whether the mental deficit stems from intoxication or from psychological impairments." <u>United States v. Parker</u>, 116 F. Supp. 3d 159, 176 (W.D.N.Y. 2015) (collecting cases).

Here, the interview was recorded so the Court does not have to speculate as to the defendant's mental state. McGee appears lucid, responsive, alert and rational during the interrogation. The interview recording shows that once Agent Flynn and his partner entered the interview room, they clearly advised McGee

of his Miranda rights and thereafter McGee signed the Advice of Rights form acknowledging his rights and agreeing to waive them. No improper or coercive psychological ploys were used during the questioning and law enforcement did not engage in any tactics that took undue advantage of any diminished mental state.

For all of these reasons, it is my Report and Recommendation that defendant's motion to suppress statements he made to law enforcement on the day of his arrest be **denied**.

## Conclusion

For the foregoing reasons, it is my Report and Recommendation that defendant's motions to dismiss the Indictment and individual counts be **denied**. It is my Decision and Order that defendant's motion for a bill of particulars is **granted in part and denied in part**. It is my Decision and Order that defendant's motion for grand jury disclosures be **denied**. It is my Report and Recommendation that defendant's motion for severance be denied. Finally, it is my Report and Recommendation that defendant's motion to suppress statements be **denied**.

SO ORDERED.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:  February 17, 2017
        Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby
**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988).

<u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u> Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." <u>**Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.**</u>

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:   February 17, 2017
         Rochester, New York

---

[1] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. United States v. Andress, 943 F.2d 622 (6th Cir. 1991), cert. denied, 502 U.S. 1103 (1992); United States v. Long, 900 F.2d 1270 (8th Cir. 1990).